IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KATHY L. BANNISTER,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>    Defendant. | No. 4:09-cv-00266 – JEG<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Kathy L. Bannister (Bannister) seeks review of the Social Security Commissioner's decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-434. This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## I. PROCEDURAL AND FACTUAL BACKGROUND

Bannister filed an application for DIB on May 1, 2006, alleging disability due to cytomegalovirus (CMV),[1] lupus, fibromyalgia, polymyalgia, and renal problems with a disability onset date of December 1, 2005. Bannister's date last insured under the Act was September 30, 2004. In a field office disability report (SSA Form 3367) the social security interviewer recommended a disability onset date of January 1, 2004.[2] Tr. 130. Having been alerted to the possibility that

---

[1] Cytomegalovirus (CMV) is defined as "a group of viruses in the family Herpesviridae infecting humans and other animals, many of the viruses having special affinity for salivary glands, and causing enlargement of cells of various organs and development of characteristic inclusions (owl eye) in the cytoplasm or nucleus." Stedman's Medical Dictionary 454 (27th ed. 2000).

[2] Under "Explanation for Recommended Onset Date," the interviewer wrote,

[W]ork in 2003 was self employment and was [substantial gainful employment]. [Bannister] started selling real estate the first of 2004 and stopped mid 2005. [T]he work in 2004 was not [substantial gainful employment] due to expenses associated

Bannister might be entitled to benefits as early as January, 1, 2004, the Commissioner used the recommended onset date to develop the record and considered whether Bannister was disabled as of that date. Bannister's claim was initially denied on August 18, 2006, and was denied again on November 29, 2006. On July 1, 2008, Bannister requested, and the Commissioner granted, that Bannister's alleged disability onset date be amended to January 1, 2004. Administrative Law Judge John Sandbothe (ALJ) granted Bannister a hearing, which was held on August 12, 2008. Bannister was represented by counsel, Timothy Tripp, at the hearing. In addition to Bannister's own testimony, Carma Mitchell, Ph.D., a vocational expert (VE), testified at the hearing.

In a written decision dated November 5, 2008, the ALJ denied Bannister benefits, finding that Bannister was not disabled within the meaning of the Act during the claimed disability period. Bannister's request for further review was denied by the Social Security Administration Appeals Counsel on May 7, 2009, rendering the ALJ's decision the final decision of the Commissioner. This appeal followed.

Bannister was born on May 24, 1952, and was fifty-four years old at the time of her administrative hearing. Bannister has past relevant work as a receptionist, leasing agent, and sales agent. Bannister lived with her husband at the time of the hearing.

## II. FINDINGS OF THE COMMISSIONER

To qualify for benefits under the Act, Bannister must be disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically

---

with the self employment. 2005 work again was not [substantial gainful employment]. [B]oth years show losses. [Bannister's Date Last Insured] 9/30/2004.

Tr. 130

determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).  The claimant bears the initial burden of showing that her impairment prevented her from returning to her prior type of employment.  Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995).  If the claimant meets her burden, then the burden shifts to the Commissioner to prove by substantial evidence that work exists that she could perform.  Id.  The Commissioner uses a five-step evaluation to determine whether a claimant is disabled within the meaning of the Act: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work."  20 C.F.R. § 404.1520(a)(4)(i)-(v).

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2004.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2004 through her date last insured of September 30, 2004 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: systemic lupus erythematosis [SLE], osteonecrosis of the right knee, and end stage renal disease status post kidney transplant (20 CFR 404.1521 et seq.).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).

    6. Through the date last insured, the claimant was capable of performing past relevant work as a receptionist. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

    7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2004, the alleged onset date, through September 30, 2004, the date last insured (20 CFR 404.1520(f)).

Tr. 13-17.

### III. STANDARD OF REVIEW

This Court's role is to determine whether the ALJ's decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010) (citing Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008)); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the conclusion." Kluesner v. Astrue, 607 F.3d 533, 536 (8th Cir. 2010) (citing Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "This standard of review requires us to consider the evidence that supports the Commissioner's decision as well as the evidence that detracts from it." Id. The fact that the Court "would have come to a different conclusion, however, is not a sufficient basis for reversal." Id. If after reviewing the record, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." Id. The Court should "defer heavily to the findings and conclusions of the Social Security Administration." Neal v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005) (citing Howard v. Massanari, 255 F.3d 577, 580-81 (8th Cir. 2001). It is upon that deferential legal framework this Court must evaluate the appeal.

**IV.   DISCUSSION**

On appeal, Bannister argues that the ALJ erred by (1) improperly weighing the medical evidence of record, (2) improperly evaluating Bannister's subjective complaints, and (3) failing to include limitations of record in Bannister's residual functional capacity (RFC).  First, however, the Court must determine the threshold question of which records the ALJ must consider in reaching his decision – whether he must only consider records created during the alleged disability period between Bannister's alleged onset date and date last insured, or also those records created before and after that time period.

    **A.  Relevance of Medical Records**

In determining that Bannister was not disabled within the meaning of the Act, the ALJ considered medical records from the time period between Bannister's alleged onset date and date last insured, focusing on just two treating physician's medical records created during that period. Bannister conversely argues that the ALJ should have relied on all medical records submitted, even those outside of the alleged disability period.

A claimant must establish disability prior to the expiration of her insurance to qualify for disability insurance benefits.  See Moore v. Astrue, 572 F.3d 520, 522 (8th Cir. 2009) (holding that claimant was not entitled to benefits because she did not prove disability existed before her insurance expired on December 13, 2004); see also Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997) (holding that only claimant's medical condition as of the date she was last insured is considered).  Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their

attention on claimant's condition at the time she last met insured status requirements). "New evidence is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition." Moore, 572 F.3d at 525 (citing Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997) (holding that claimant's non-disabling knee condition that later deteriorated into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits)). Bannister's insurance expired on September 30, 2004. Thus, the ALJ need not consider records after September 30, 2004, unless they reflect that Bannister's disability existed between her alleged onset date and date last insured.

**1. Medical Records Created Between January 1, 2004, and September 30, 2004**

A review of medical records reveals that Bannister's medical conditions were stable in 2004. Material deterioration of those conditions did not begin until after Bannister's disability insurance coverage expired.

Dr. Craig Shadur, M.D. (Dr. Shadur) examined Bannister on February 18, 2002, after Bannister was hospitalized for gastroenteritis, and Dr. Shadur continued to see Bannister for follow-up of her 1995 renal transplant. In February 2004, after Bannister had recovered from cosmetic surgery, Dr. Shadur checked Bannister for lupus and myalgia symptoms and found that her kidneys were "stable to excellent." Tr. 383. In a report dated June 30, 2004, Dr. Shadur noted that Bannister had "excellent allograft function,"[3] her kidney condition was "extremely stable," and her cardiac exam was normal. Tr. 382.

---

[3] Allograft is defined as "a graft transplanted between genetically nonidentical individuals of the same species." Stedman's Medical Dictionary 48 (27th ed. 2000).

### 2.  Post-September 30, 2004, Medical Records

On January 25, 2005, Dr. Shadur examined Bannister and reported that "[s]ince early December [2004 Bannister has] been having a few medical issues," but that she had excellent allograft function.  Tr. 381.  Although, Dr. Shadur indicated that Bannister had various medical issues, he did not note SLE or any myalgias. On March 3, 2005, Dr. Shadur prepared a history and physical assessment when Bannister was admitted to the hospital.  In his assessment, Dr. Shadur noted that Bannister had "excellent [a]llograft function" with her kidney transplant, that her SLE was "currently without evidence of disease activity," that she had had a CMV infection "approximately six years ago," and said nothing about any history of myalgias.  Tr. 379.  Dr. Shadur also recorded that "[t]he patient states that her current illness began in early January [2005]."  Id.

On March 4, 2005, David Kikoler, D.O. (Dr. Kikoler) examined Bannister and, consistent with Dr. Shadur, reported the onset of Bannister's impairments to have been "[acute] following an evening of cleaning out a dusty and dirty basement."  Tr. 418.

On December 19, 2005, Dr. Shadur observed.

> Given the clinical severity of [Bannister's] symptoms of polymyalgia and fibromyalgia which include diffuse muscle weakness as well as activity related to her lupus, I have advised her that it would be reasonable for her to be back on disability.  I know that clinically she feels significantly better, now that she has reduced or stopped working, in terms of her clinical symptomatology.

Tr. 371.  Dr. Shadur's treatment notes do not indicate when Bannister began showing symptoms of myalgias or when her lupus renewed activity; however, when read in conjunction with the records from 2004 and earlier in 2005, the December 19, 2005, report does not help elucidate Bannister's condition in 2004.

Medical records created subsequent to Dr. Shadur's disability recommendation on December 19, 2005, similarly fail to indicate that Bannister was suffering from disabling impairments in 2004. For instance, Bannister's history and physical assessment prepared by Robert H. Leisy, D.O. (Dr. Leisy) prior to Bannister's admission to the hospital in 2007 noted that Bannister's past history was notable for end-stage renal disease but stated that she had "well maintained allograft function." Tr. 222. Dr. Leisy also noted Bannister's history of SLE, though inactive at the time, and a CMV infection that last occurred seven years earlier. Id. Dr. Leisy also did not note any history of myalgias.

Thus, Bannister's medical records created after September 30, 2004, do not help elucidate Bannister's condition as it existed during the nine-month period between Bannister's alleged onset date and date last insured and need not have been considered by the ALJ.

### 3. Pre-January 1, 2004, Medical Records

At an August 21, 2001, examination with Dr. Shadur, Bannister denied any symptoms from lupus. On July 18, 2002, Dr. Shadur wrote that "[i]nterval history includes no referable symptoms of lupus." Tr. 185.

As with Bannister's post-September 30, 2004, medical records, Bannister's pre-2004 records from her routine follow-up care post renal transplant evidence a good recovery as Dr. Shadur described her "excellent" kidney function on March 3, 2003, and on October 1, 2003, noted that he was "very pleased by the way things were going for her." Tr. 405, 402. Thus, Bannister's pre-2004 medical records are consistent with the 2004 medical records that establish she had recovered to a stable point during the alleged period of disability.

Bannister's medical records created prior to the alleged disability period support a conclusion that Bannister has a history of several impairments that stabilized before the relevant time period and therefore do not support a finding of disability in 2004. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) ("In the social security disability context, impairments that are controllable or amenable to treatment do not support a finding of disability."). Based on a review of the record as a whole, the ALJ did not improperly focus on the medical records created between Bannister's alleged onset date and date last insured in evaluating her alleged disability.

### B. Weight Attributed to Medical Records

Bannister argues that the ALJ erred by giving Dr. Shadur's medical opinions from 2004 controlling weight in determining Bannister's alleged disability while not giving similar controlling weight to records created after the relevant time period.

As previously discussed, the ALJ need not consider medical records created after the date last insured unless they relate to Bannister's condition before the date last insured. See Cox, 471 F.3d at 907; Moore, 572 F.3d at 525. A treating source's opinion is given "controlling weight if the opinion is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with other substantial evidence." Wilson v. Astrue, 493 F.3d 965, 968 (8th Cir. 2007); see also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that the ALJ may give less weight to medical opinions that are inconsistent with the record provided by the treating physician); 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). The Court will

"uph[o]ld an ALJ's decision to discount or even disregard the opinion of a treating physician (1) where other medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007); see also Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008).

The ALJ applies the following factors to determine the weight to be given the treating source's opinion: "(1) length of the treatment relationship and the frequency of examination; (2) nature and extent of treatment relationship; (3) medical support for the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors the claimant brings to the ALJ's attention." 20 C.F.R. § 404.1527(d)(2)-(6). However, a treating physician's opinion "does not automatically control or obviate the need to evaluate the record as whole." Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (citing Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001)).

Contrary to Bannister's argument, the ALJ acknowledged that the opinion of Dr. Shadur, the treating physician, is entitled to great weight. However, Dr. Shadur's treatment notes do not establish that Bannister was disabled between her alleged onset date and date last insured. Dr. Shadur's treatment notes before January 1, 2004, indicate a stable period controlled with medication. During this time, Bannister complained of sinus congestion and myalgias but was comfortable and fit to travel to San Diego and Palm Springs. In October 2003, Dr. Shadur's treatment notes do not indicate that Bannister complained of any lupus or myalgia symptoms, and Dr. Shadur found her kidney function "extremely stable." Tr. 382-83.

However, on January 1, 2005, three months *after* Bannister's date last insured, Dr. Shadur noted that "since early December we have been having a few medical issues." Tr. 381. On

December 19, 2005, nearly two years after Bannister's alleged disability onset date and over a year after her date last insured, Dr. Shadur "advised [Bannister] that it would be reasonable for her to be back on disability." Tr. 371. Dr. Shadur's December 19, 2005, opinion, if intended to indicate that Bannister was disabled in 2004, would be inconsistent with the treatment records created during 2004 wherein Dr. Shadur did not note any conditions consistent with Bannister's alleged severe impairments. Furthermore, in the social security disability context, doctors do not determine disability. See Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (according to 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2), "the final responsibility for determining whether an impairment reaches listing level is for the Commissioner").

Bannister relies on Gude v. Sullivan, 956 F.2d 791, 984 (8th Cir. 1992), for the premise that Dr. Shadur's medical evaluations in 2004 should be considered in light of Bannister's chronic disease. In Gude, the court found that the ALJ erred in relying on the treating physician's statement that the "[claimant] is doing well," when according to the record, the claimant was merely doing well "for someone who suffers from SLE." Gude, 956 F.2d at 984. Gude is distinguishable from this case because the treating physician in Gude concluded that during the disability period, the claimant's SLE symptoms would interfere with permanent employment, whereas Bannister's treating physician did not opine that Bannister was disabled until *after* her date last insured. By comparison, Dr. Shadur's statements evidence no similar qualification that caused the Gude court to find that the ALJ erred. Id.

Bannister also relies on Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003), for the proposition that the ALJ needs to consider all of the treating source's medical opinions. In Shontos, the ALJ erred in drawing inferences from the medical reports and discounting the opinions of the claimant's treating health providers who had "longitudinal perspective."

11

Shontos, 328 F.3d at 426.  This case is distinguishable from Shontos because the question here is not whether Dr. Shadur's opinion is valid, rather it is whether the medical opinions demonstrate disability during the period between the alleged onset of disability and date last insured.  Dr. Shadur certainly has "longitudinal perspective," but evidence in the record shows that his assessment of disability reflected Bannister's condition in 2005 and later, rather than her condition during the alleged disability period in 2004.

In his decision, the ALJ attributed less weight to Dr. Shadur's 2005 opinion because it was not relevant to the time period prior to Bannister's date last insured.  See Moore, 572 F.3d at 525.  The ALJ noted that "no physician diagnosed or treated [the claimant's alleged fibromyalgia syndrome and depression] during the time in question," and "disability cannot be established based on the claimant's statements alone."  Tr. 15.  Likewise, the record as a whole demonstrates that Dr. Shadur's recommendation that Bannister be on disability is not supported by medical evidence because it is inconsistent with Dr. Shadur's 2004 treatment notes and, therefore, does not relate to Bannister's condition prior to her date last insured.

The ALJ noted that Dr. Shadur's opinions from 2004 supported a finding that Bannister did not suffer from severe impairments that would preclude her from work.  The ALJ did not reject evidence from outside of the period but gave the greatest weight to the records created during the alleged disability period.  Thus, the ALJ did not improperly determine the weight to be accorded to Dr. Shadur's treatment records.

### C.  Subjective Complaints

Bannister next argues that the ALJ erred in rejecting her subjective complaints.  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the

courts." Moore, 572 F.3d at 524 (quoting Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001)). To evaluate subjective complaints, the "ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010) (quoting Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001)). "Other factors also include the claimant's 'relevant work history and the absence of objective medical evidence to support the complaints.'" Id. (noting that the above factors are derived from Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ need not explicitly discuss each factor – it is sufficient if the ALJ acknowledges the factors before discounting the claimant's subjective complaints. Moore, 572 F.3d at 524. "Subjective complaints can be discounted, however, where inconsistencies appear in the record as a whole." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). "We will not disturb the decision of an [ALJ] who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain." Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) (quoting Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).

While the ability to perform daily activities does not conclusively demonstrate the lack of a disability, "[i]nconsistencies between subjective complaints of pain and daily living patterns may also diminish credibility." Pena, 76 F.3d at 908. The court in Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007), found that caring for an eleven-year-old child, driving, fixing simple meals, doing housework, and shopping for groceries were "extensive daily activities" that did not support claimant's alleged inability to work. Similarly, in Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999), the court found that playing cards, watching television, shopping, performing occasional housework, and transporting family members were activities inconsistent

13

with disabling pain. Like the activities in Roberson and Riggins, Bannister's daily activities included driving, fixing simple meals, doing light housework, sewing, watching television, and shopping. Such activities are inconsistent with Bannister's claim of disability, which supports the ALJ's decision to discount Bannister's testimony about *disabling* pain and fatigue. The inquiry on this appeal and as conducted by the ALJ is not a determination that a claimant is or is not suffering some difficulty or limitation resulting in some personal burdens but rather a determination if that claimant is disabled under the Act.

Although Bannister was living with several conditions during the alleged disability period, the ALJ found that Bannister's condition was stable and well-controlled with medications and treatment. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (quoting Brown, 390 F.3d at 540 (8th Cir. 2004)). In Bannister's follow-up visits after renal transplant, Dr. Shadur determined that Bannister's kidney function was stable, and her physical examination was normal. Thus, the ALJ's credibility determination is further supported because the record provides a basis upon which to find that Bannister's impairments were controlled by medication.

The ALJ also found inconsistencies in Bannister's allegations regarding the time frames of her illnesses. Bannister claims she was extremely ill and hospitalized for CMV in 2003 or 2004. However, there are no medical records for any hospitalization for CMV during those years. Bannister was hospitalized for CMV sometime between 1999 and 2000, and she was hospitalized for gastroenteritis in February 2007.

Additionally, the ALJ found Bannister's subjective complaints not entirely credible due to inconsistencies regarding Bannister's decision to wait to apply for disability benefits until May 1, 2006, and the fact that she initially alleged a disability onset date of December 1, 2005. The

ALJ noted that Bannister's allegation that her disability existed in 2004 arose only after the initial denial of her claim for benefits and after engaging legal counsel. The ALJ did not improperly consider these inconsistencies found in the record as a whole when discounting Bannister's credibility regarding her subjective complaints. See Edwards, 314 F.3d at 966.

Based on evaluation of the foregoing factors, the ALJ did not improperly discount Bannister's subjective complaints. Moreover, because the ALJ found that Bannister could only perform sedentary work, he had already assumed significant symptoms. The ALJ's restriction to sedentary work is noteworthy because it shows that, despite the lack of objective medical evidence supporting functional restrictions, the ALJ did take into account some of Bannister's subjective complaints. See infra Part IV.D.; cf. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("[Claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating physician's] medical opinions."). However, significant symptoms do not necessarily equal disability under the Act.

Bannister's argument that the ALJ failed to consider a third-party statement from her husband is contrary to the record since the ALJ did consider Mr. Bannister's statement when he referenced third-party reports of Bannister's daily activities because the bulk of Mr. Bannister's third-party report concerns Bannister's daily activities. Further, "corroborating testimony of an individual living with a claimant may be discounted by the ALJ, as that person has a financial interest in the outcome of the case." Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006). The ALJ specifically found Mr. Bannister's statement about Bannister's activities inconsistent with her allegation that she was bedfast.

Based on the foregoing, the record reveals that ALJ evaluated the Polaski factors in outlining his reasons, with support in the record, to discount Bannister's subjective allegations. Thus, the Court cannot disturb the ALJ's credibility determination. See Pena, 76 F.3d at 908.

### D. Residual Functional Capacity

The ALJ found that Bannister could perform the full range of sedentary type work during the relevant time period. See 20 C.F.R. § 404.1567(a). Bannister argues that the ALJ's RFC failed to capture the concrete functional limitations of record. See Pl.'s Br. 15-17. Specifically, Bannister avers that she lacks the concentration and stamina to do even sedentary work.

A claimant's RFC represents the most the claimant can do despite her limitations, considering the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). "It is the Claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (citing Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)). If the claimant can meet the physical and mental demands of her past relevant work, she is not disabled. See Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); SSR 82-61 (1982 WL 31387, at *1) ("[W]here evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'"). "In addition to medical evidence, when determining RFC the ALJ must consider the observations of treating doctors and others and the claimant's own description of her limitations." Willcockson v. Astrue, 540 F.3d 878, 880 (8th Cir. 2008). However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Cox, 495

F.3d at 619 (citing 20 C.F.R. §§ 416.927(e)(2), 416.946); see also House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007).

Bannister relies on the July 24, 2006, evaluation by licensed psychologist Charlene A. Bell, Ed. D. (Dr. Bell), who opined that Bannister's ability to "[carry] out instructions and [maintain] attention, concentration and pace would be severely limited." Tr. 355. Bannister also relies on the August 7, 2006, evaluation by Barbara M. White, D.O. (Dr. White) to conclude that she "would have to be able to take frequent days off" from any work she did. Tr. 361. Finally, Bannister rests on the August 6, 2007, evaluation by Dr. Shadur wherein he stated that "if Ms. Bannister were to perform even a sedentary sustained work this would represent a significant problem for her." Tr. 251. The evidence that Bannister relies on is insufficient since it post-dates her date last insured by almost two years, which, as already discussed, does not help elucidate Bannister's functional restrictions in 2004. The records from the relevant time period in 2004 do not indicate any mental health complaints that would support her allegations of reduced concentration nor is there any reported medical impairment that would diminish concentration.

Considering the record as a whole, the ALJ found that Bannister had the RFC to perform a full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a), through the date last insured. The ALJ found that during the relevant time period, Bannister was capable of performing her past relevant work as a receptionist. See 20 C.F.R. 404.1565. Within fifteen years of the date last insured, Bannister worked as a receptionist at Quality Wine Company Inc. The ALJ stated that this job satisfied the definition of "past relevant work," compared it to Bannister's RFC, and found that Bannister was able to perform the job during the relevant time period in 2004.

Also, Bannister did not carry her burden to show that she could not return to her prior employment. Roth, 45 F.3d at 282. Although Bannister suggests that she was essentially bedridden during the alleged disability period, this characterization of her symptoms is inconsistent

with the objective medical records and Bannister's testimony at the hearing in which she described her ability to do activities such as light housework. In both of Bannister's visits to Dr. Shadur during 2004, her renal function was excellent, and no other problems were reported.

If Bannister did suffer from a change in her physical limitations in 2004, Dr. Shadur's lack of mentioning a change or new symptoms in 2004 cuts against Bannister's argument that she could not perform sedentary work in 2004. In addition, the fact that Dr. Shadur did opine that Bannister had a disability precluding sedentary work in 2007, but did not do so in 2004, similarly undercuts Bannister's argument that her symptoms were disabling during the relevant time period. As previously discussed, Dr. Shadur's April 2007 report did not address Bannister's functional capacity during the relevant time period in 2004, and the ALJ did not improperly discount Bannister's subjective complaints that allegedly contradict the ALJ's RFC finding.

The ALJ relied on VE testimony to assist in his evaluation of Bannister's ability to perform her past relevant work. See 20 C.F.R. § 404.1560 (2009). The VE testified that Bannister's former job as a receptionist was sedentary work. The ALJ presented the following hypothetical question assuming Bannister's vocational and medical background: "She could lift 10 pounds occasionally and 5 pounds frequently, and she could only be on her feet . . . four hours total during a work day. She could only occasionally balance, stoop, crouch, kneel, crawl, or climb." Tr. 481. The ALJ's hypothetical was consistent with the ALJ's RFC determination. "A hypothetical question is properly formulated if it sets forth impairments 'supported by substantial evidence in the record and accepted as true by the ALJ'" and therefore "[d]iscredited complaints of pain . . . are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them." Guilliams v. Barnhart, 393 F.3d 798, 804 (8th Cir. 2005) (quoting Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001)). In consideration of the entire record, the VE testified that an individual of Bannister's age, education, work experience, and RFC could perform the job of receptionist. The medical records support the VE's testimony since Dr. Shadur does not

indicate any functional changes or limitations that would preclude Bannister from working, and Bannister's subjective complaints were not improperly discounted.  Because the ALJ's hypothetical question was properly formed based on the record as a whole, the VE's testimony that Bannister could perform her past relevant work constitutes substantial evidence supporting the denial of DIB.  See Hilkemeyer v. Barnhart, 380 F.3d 441, 447 (8th Cir. 2004).

Based on the record as a whole, the ALJ concluded that Bannister was not disabled because she could perform her past sedentary work as a receptionist.  See Jones, 86 F.3d at 826.  Because the ALJ's RFC is supported by evidence in the record as a whole, the Court will not disturb the ALJ's finding of no disability.

## V.  CONCLUSION

After a thorough review of the entire record and in accordance with the deferential standard of review, this Court must follow, the Court concludes that the ALJ's determination of no disability was supported by substantial evidence in the record.  Accordingly, the decision of the ALJ must be **affirmed**, and the case is **dismissed**.  The Clerk of the Court is directed to enter Judgment for the Defendant and against the Plaintiff.

**IT IS SO ORDERED.**

Dated this 6th day of August, 2010.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT